IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SADIE D. AUSTIN,
     Plaintiff,

vs.                             Case No. 5:07cv52/MCR/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
     Defendant.
_____/

## REPORT AND RECOMMENDATION

     This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D), and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq.*  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

     Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

I.     PROCEDURAL HISTORY

     This suit involves both of Plaintiff's applications, one for DIB and one for SSI, which were made on April 29, 2002, and then denied initially and on reconsideration.  On September 20, 2005, following a hearing, an administrative law judge (ALJ) rendered a decision in which he found that

Plaintiff was not under a "disability" as defined in the Act (Tr. 20–29).[1]   On January 9, 2007, the Appeals Council of the Social Security Administration denied Plaintiff's request for review, after considering additional evidence submitted by Plaintiff (Tr. 9–12).   Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.   Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).   This appeal followed.

II.   FINDINGS OF THE ALJ

On September 20, 2005, the ALJ made several findings relative to the issues raised in this appeal (Tr. 20–29):

1)   Plaintiff meets the non-disability requirements for a period of disability and DIB set forth in Section 216(i) of the Act and is insured for benefits through September 20, 2005, the date of the ALJ's decision.

2)   Plaintiff has not engaged in substantial gainful activity (SGA) since December 31, 2000.

3)   Plaintiff's diabetes, herniated disc, high blood pressure, chronic neck pain, chronic left scapular/shoulder myofascial pain, osteoarthritis, arterial occlusive disease, and depression are considered "severe" based on the requirements in the Regulations, 20 C.F.R. §§ 404.1520(c) and 416.920(c).[2]

4)   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5)   Plaintiff's allegations regarding her limitations are not totally credible.

6)   Plaintiff has the residual functional capacity (RFC) to perform the exertional demands of a limited range light work with no use of the left upper extremity; she is unable to climb or crawl; she requires a sit/stand option and simple non-detailed tasks; and she has pain of a mild to moderate degree.

7)   Plaintiff is unable to perform any of her past relevant work (20 C.F.R. § 404.1565).

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on August 9, 2007 (Docs. 12, 13).

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416).  Therefore, hereafter, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

8)   Plaintiff is an "individual closely approaching advanced age" (20 C.F.R. § 404.1563).

9)   Plaintiff has a "high school (or equivalent) education" (20 C.F.R. § 404.1564).

10)  Plaintiff has transferable skills from semi-skilled work previously performed (20 C.F.R. § 404.1568).

11)  Plaintiff has the RFC to perform a significant range of light work (20 C.F.R. § 404.1567).

12)  Although Plaintiff's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rules 202.21 and 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that Plaintiff could perform.  Examples of such jobs include work as a Companion, light and semi-skilled; Surveillance Monitor, sedentary and unskilled; and Bench Assembler, light and unskilled.

13)  Plaintiff was not under a "disability," as defined in the Act, at any time through September 20, 2005 (20 C.F.R. § 404.1520(g)).

## III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate

to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing SGA, she is not disabled.

2.      If the claimant is not performing SGA, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing SGA and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL, EMPLOYMENT AND MEDICAL HISTORY[3]

    A.    Personal History

Plaintiff was born on March 19, 1952, and she has a high school education. She was fifty-three years old when the ALJ issued his decision. Her past work experience includes employment as a sewing machine operator, short-order cook, waitress, and hospital cook. She initially alleged disability as of November 19, 1999, due to diabetes, herniated disc, high blood pressure, osteoarthritis, and depression. She later amended her onset of disability date to January 1, 2001, after the ALJ determined that she had performed SGA through December 31, 2000 (see Tr. 22).

Plaintiff stated she has pain in her neck, shoulder, knees, hips and low back, and she has problems reaching or lifting overhead. She takes pain medication, which she feels causes problems with concentration, as well as nausea and diarrhea. Plaintiff no longer drives due to anxiety attacks. At the hearing, she estimated she can sit for 20 to 30 minutes at a time but stated she can not stand too long. She testified that she is right-handed now, but prior to her injury she was left-handed. She uses a cane for balance and to take pressure off her knee. She must have help in washing and drying her hair because she cannot hold her arms overhead, and her two daughters clean the house and cook for Plaintiff and her husband (who is disabled due to spine problems). Plaintiff stated that she attends church and walks about 50 feet to the lake twice a week. She also stated that she watches the news for about 30 minutes at a time. Plaintiff indicated in a questionnaire dated February 2005 that she can walk 50 yards and later walk 50 yards again, stand for 30 to 45 minutes, sit for 30 to 45 minutes, stand for two hours in an eight-hour day, and sit for six hours in an eight-hour day. She

---

[3]Unless otherwise noted, the information in this section is derived from the opinion of ALJ.

stated that she could pick up things with one hand, noting that she could pick up things weighing five pounds with her left hand and fifteen pounds with her right hand.  To alleviate her pain, Plaintiff has tried a TENS unit, heating pad, moist heat, muscle relaxer, exercise, heat patch, pain rubs, meditation, and getting more rest.  Plaintiff is a smoker but stated she has reduced her smoking from 2 1/2 packs per day to 6 to 8 cigarettes per day.

       B.       Relevant Medical History — Physical

Plaintiff was involved in a work-related accident on November 18, 1999.  She was reaching overhead with her left arm to get some plates off a shelf when she felt the onset of pain.  Dr. VerVoort, a pain management physician, found her to have a scapular strain injury manifested by the development of tender trigger points of the left cervical, suprascapular, and medial scapular muscles.  She was treated conservatively with stretching exercises and medication.  She participated in physical therapy which improved her shoulder and scapular flexibility, but her pain remained unchanged.  She continued to work three days per week and was willing to increase her work hours to four days a week, but at a maximum of seven hours per day because longer days were too painful. An MRI (magnetic resonance imaging) of the cervical spine on April 24, 2000, showed a left paracentral to lateral disc herniation at C5–6.  In June and July 2000, Plaintiff underwent a series of three cervical epidural steroid injections.  In January 2001, she continued to work 30 hours per week with modification of activity, and Dr. VerVoort opined that she could continue with a schedule of not working more than two consecutive shifts of seven hour workdays with a total of 30 hours per week.

Dr. Woodham performed an anterior cervical diskectomy fusion in March 2001.  At her follow-up examination in April 2001, Plaintiff stated she had no significant arm pain and that she was "100 percent better than she was before surgery."  Dr. Woodham stated that Plaintiff's x-rays showed a "great looking" anterior cervical fusion with no problems, and she was discharged to return as needed.

In April 2001, after undergoing the cervical fusion, Plaintiff returned to Dr. VerVoort.  She noted that the fusion had given her nearly complete resolution of her left arm pain, but she continued to have left scapular and cervical myofascial pain.  Plaintiff was referred to physical therapy to restore mobility and improve her strength and endurance.  In May 2001 she was returned to work

on a part-time basis, up to 21 hours per week, alternating days, with no lifting over 10 pounds and no overhead activity with the left arm.  Plaintiff showed gradual improvement to the extent that, on June 25, 2001, Dr. VerVoort recommended that Plaintiff increase her work hours to 40 hours per week.  In July 2001, Plaintiff reported that she recently performed two hours of grill cook operation, which markedly increased her left-sided neck and scapular pain.  In September 2001 she was released to full-time work with performance of grill cook operation only as tolerated.  In May 2002, Dr. VerVoort opined that Plaintiff should lift no more than five pounds with her left arm, perform no overhead activity with her left arm, and refrain from pushing or pulling with her left arm. In December 2002, at the request of Plaintiff's attorney in a workers' compensation case, Dr. VerVoort opined that Plaintiff was capable of performing the three jobs described in forms submitted by the attorney for the defense in that case.[4]  In February 2003, Dr. VerVoort noted that Plaintiff had been offered a job at Waffle House that reportedly would not involve lifting more than five pounds, which was the restriction previously imposed by Dr. VerVoort in December 2002.  However, Plaintiff informed Dr. VerVoort that she would not return to work without communicating with her attorney, and she was continuing to pursue DIB (Tr. 210).

Dr. Yanus has been Plaintiff's treating physician for several years with regard to her diabetes, arthritis, depression, and arterial occlusive disease of the right lower extremity.  He also treats her for chronic pain related to cervical disc disease and myofascial syndrome of the left shoulder.  Dr. Yanus stated in June 2002 that injection therapy had counteracted with Plaintiff's diabetes, and she had to discontinue injection therapy.  X-rays ordered by Dr. Yanus in April 2002 showed mild changes of osteoarthritis involving both hips and slight osteopenia in the left knee.  In June 2002 and July 2004, Dr. Yanus stated that in his professional opinion Plaintiff was unable to work.

Plaintiff's diabetes has also been followed by Dr. Sabbagh.  She has been counseled, attended diabetes classes, and instructed as to how to change her diet, but her blood sugar continues to be uncontrolled due to the fact that she has failed to follow her diabetic diet and take her medications as instructed.  In August 2004, after a lot of reluctance, Plaintiff was placed on insulin

---

[4]Dr. VerVoort's notes do not reflect the nature of the three jobs he found Plaintiff capable of performing (*see* Tr. 211).

therapy.  A non-invasive bilateral lower extremity arterial study showed severe arterial occlusive disease involving the right lower extremity with iliac and/or femoral lesion suspected.

Dr. Shuler evaluated Plaintiff in October 2004 and found her to have severe peripheral vascular disease with lifestyle limiting claudication.  An arteriogram found Plaintiff in need of angioplasty.  In November 2004, Plaintiff underwent a successful balloon angioplasty of the right superficial femoral artery.  Plaintiff tolerated the procedure well and at the conclusion of surgery had a palpable pulse in her foot.

C.      Relevant Medical History — Mental

In October 2002, at Plaintiff's request, she was given a prescription for Prozac for clinical depression which had been diagnosed by a psychologist/counselor.  In February 2003, Dr. VerVoort noted that Plaintiff felt less anxiety and depression, and she was rarely using Lortab or Skelaxin for pain management (Tr. 210).  Dr. VerVoort additionally stated that "all in all" Plaintiff was in a stable state (*id.*).

D.      Other Information Within Plaintiff's Claim File — Physical

Plaintiff was consultatively examined by Dr. Brooks in March 2004.  He found her to have non-insulin dependent diabetes mellitus, poorly controlled; hypertension, controlled; moderate obesity; myofascial pain syndrome, rule out fibromyalgia; osteoarthritis; and unipolar depression. Regarding the myofascial pain, Plaintiff stated the pain increases as the day goes on and that she takes over-the-counter medication, which helps when the pain is mild, but she has to take stronger medication when the pain becomes more severe.  Dr. Brooks indicated that Plaintiff was diagnosed with diabetes mellitus and put on medications when she was forty years old.  He stated that her diabetes has been out of control over the past eight months despite treatment.  Her shoulders fatigue quite easily, but examination of the extremities was within normal limits other than slightly decreased sensation in the right lateral forearm, the right medial leg, and the left lateral leg.  Dr. Brooks recommended that Plaintiff attend an appropriate exercise program.  Dr. Brooks also noted limitation in the range of motion of the left upper extremity and recommended "no work involving the left arm pushing, pulling or lifting."

A Physical RFC Assessment by a non-examining State Agency physician in September 2003 limited Plaintiff to lifting no more than twenty pounds and standing or sitting six hours in an eight-

hour workday (Tr. 295).  Additionally, the physician opined that Plaintiff would have "frequent" postural limitations and "occasional" reaching limitations due to scapular pain in her shoulder (Tr. 296–97).

E.      Other Information Within Plaintiff's Claim File — Mental

In a Psychiatric Review Technique Form completed by a non-treating State Agency physician in December 2002, Plaintiff was found to have a depressive disorder NOS with mild limitation in restriction of daily living and maintaining social functioning, and moderate limitation in maintaining concentration, persistence and pace.

An independent medical examination was conducted by Dr. Patel in January 2003.  Dr. Patel found Plaintiff to be moderately depressed, secondary to ongoing pain.  Her affect was somewhat constricted, and low self esteem was noted.  Her GAF score was 44.[5]  Dr. Patel stated that in terms of Plaintiff's ability to work, it was clear that on psychiatric grounds alone, she should have no work-related disability.

A second Psychiatric Review Technique Form, completed by a non-treating State Agency physician in August 2003, indicated that Plaintiff has non-severe depression.  The physician found limitation of a mild degree in restriction of activities of daily living, difficulties maintaining social functioning, and difficulties maintaining concentration, persistence and pace.

Scott Lankford, Ph.D., performed a vocational evaluation in October 2002.  He administered the SIT-R, WRAT III, and BDI, which showed Plaintiff to have an IQ of 86, limited overall academic achievement, and moderate to severe depression that was felt to be interfering with her ability to concentrate and maintain occupational and social functioning.  Dr. Lankford stated that Plaintiff's "vocational prognosis is guarded at best and it is unlikely she will be able to return to the competitive work force" (Tr. 207).

F.      Other Information Within Plaintiff's Claim File — Vocational Expert Testimony

---

[5]Global assessment of functioning ("GAF") is the overall level at which an individual functions including social, occupational, academic, and other areas of personal performance.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 1994).  It may be expressed as a numerical score.  Id. at 32.  A score between 41 and 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  Id.

Based on hypothetical questions presented to the vocational expert (VE), the VE opined that Plaintiff could perform work as a Companion, which is light and semi-skilled, with 25,000 such jobs available in the regional economy and 341,000 in the national economy; Surveillance Monitor, which is sedentary and unskilled, with 2,500 such jobs available in the regional economy and 90,000 in the national economy; and Bench Assembler, which is light and unskilled, with 77,213 such jobs available in the regional economy and 2 million in the national economy.

V.   DISCUSSION

Plaintiff has raised six general issues on appeal, which can be summarized as follows:  1) the ALJ erred in determining Plaintiff's physical and mental RFC, 2) the ALJ erred in his consideration of the opinions of Dr. Yunus and Dr. VerVoort, 3) the ALJ erred in evaluating Plaintiff's credibility, 4) the ALJ erred in determining that jobs were available that Plaintiff could perform, 5) the Appeals Council erred in its consideration of evidence submitted by Plaintiff, and 6) the incomplete hearing transcript requires remand.[6]

A.       Consideration of the Opinions of Dr. Yunus and Dr. VerVoort

Plaintiff contends the ALJ improperly rejected the opinion of Dr. Yunus that she was "totally disabled due to chronic pain in the left side of the neck, back of the left shoulder, and back" (Doc. 17 at 14).  Additionally, Plaintiff contends the ALJ erred in failing to state the weight accorded to the opinion of Dr. VerVoort that Plaintiff's "cervical fusion would affect her ability to perform repetitive movements of the neck" (*id.* at 15).

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise.  *See* Lewis v. Callahan, 125 F.3d 1436, 1439–41 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991);  Sabo v. Commissioner of Social Security,  955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted).  The ALJ may discount a treating physician's

---

[6]In the discussion that follows, the court has rearranged Plaintiff's arguments for organizational purposes.

opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See* Edwards, 937 F.2d at 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See* Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also* Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion.  *See* Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether Plaintiff meets a listed impairment, a claimant's RFC (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because those ultimate determinations are the providence of the Commissioner.  20 C.F.R. § 404.1527(e).  The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims.  The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner.  For instance, 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion.  Furthermore, the Commissioner "will not give any special

significance to the source" of an opinion on issues reserved for the Commissioner.  20 C.F.R. § 404.1527(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance").  Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record.  SSR 96-5p.  In Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997), the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do any work, and the physician subsequently wrote a letter saying the claimant was completely disabled.  To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. Additionally, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters.  These things are not properly considered by the Commissioner in determining disability.  20 C.F.R. § 404.1566. For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

Finally, the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.  *See* Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)).  "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (Former 5th Cir. Unit B Nov. 1981).

First, as to Dr. Yunus, the court notes that the ALJ specifically recognized his status as a treating physician, as he stated "Dr. Yanus has been [Plaintiff's] treating physician for several years . . ." (Tr. 24).  The ALJ also noted that Dr. Yanus had twice opined that Plaintiff was unable to work, once in June 2002 and once in July 2004 (*see id.*; Tr. 182, 324).  The ALJ then rejected the opinions of Dr. Yanus and provided one reason for doing so:  "It is noted that an opinion that the claimant is unable to work is reserved to the Commissioner."  (Tr. 24).  While the ALJ was correct in his observation, the ALJ erred in failing to provide any other justification for rejecting Dr. Yunus's opinions.  Although the ALJ certainly was not bound by Dr. Yunus's opinion of "disability," as the ultimate question of whether a claimant is disabled or unable to work is reserved to the Commissioner, the ALJ should have nevertheless given weight to Dr. Yunus's other opinions concerning the nature and severity of Plaintiff's impairments.  Moreover, although ultimate opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record, *see* SSR 96-5p; Lewis, 125 F.3d at 1441, but the ALJ's opinion fails to give any indication that he did so.  Thus, the ALJ erred in his consideration of Dr. Yunus's opinion.[7]

Regarding Dr. VerVoort, Plaintiff contends the ALJ erred by failing to include in his hypothetical question to the VE the opinion of Dr. VerVoort that Plaintiff would have a limited range of motion in her neck due to her cervical fusion, noting that the "ALJ did not reject this limitation, but failed to include [it] in the hypothetical question or RFC" (Doc. 17 at 15).  Initially, it is noted that Plaintiff's anterior cervical fusion was performed in March 2001, and in April 2001 Plaintiff's x-rays were "great looking" and she reported 100% improvement.  Similarly, in April 2001, Plaintiff also reported to Dr. VerVoort that the fusion had given her nearly complete resolution

---

[7]In arguing that the ALJ did not err, the Commissioner asserts that "Dr. Yanus' opinion is inconsistent with the overall record of evidence . . . including objective medical evidence, other doctors who released Plaintiff to work, and Plaintiff's activities" (Doc. 22 at 9).  While this may be true, the ALJ did not make these findings.  It is not the role of this court, or the Commissioner, to create reasons to support the ALJ's findings; rather, the ALJ must make his own findings and outline them in the opinion.  This court cannot uphold a decision by an administrative agency, any more than a circuit court can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result, or the reasons are not included in the decision.  Green v. Shalala, 51 F.3d 96, 100–01 (7th Cir. 1995); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994); Zblewski v. Schweiker, 732 F.2d 75, 78–79 (7th Cir. 1984); Cline v. Sullivan, 939 F.2d 560, 563–69 (8th Cir. 1991).

of her left arm pain, although she continued to have some cervical myofascial pain. Thus, Dr. VerVoort referred her to physical therapy. In May 2001 Plaintiff was returned to part-time work by Dr. VerVoort with no restrictions related to her neck; she was restricted only with regard to overhead lifting and use of the left arm. From June to September 2001, Plaintiff was released to full-time work; the only restriction related to her neck was that she perform grill cook operation only "as tolerated" because Plaintiff had reported that it resulted in increased neck pain. In May 2002, after Plaintiff reported continued neck pain, Dr. VerVoort opined that Plaintiff is "permanently restricted" from lifting more than five pounds with her left arm, performing any activity with her left arm, or doing any pushing or pulling with the left arm, as these were the activities causing Plaintiff's neck pain (Tr. 216). This opinion of Dr. VerVoort was indeed included in the ALJ's RFC determination, as the ALJ determined that Plaintiff would be precluded from <u>any</u> work involving any use of the left upper extremity (*see* Tr. 26).

Although the ALJ did not discuss Dr. VerVoort's opinion regarding limited repetitive neck movements, the only mention of this restriction in the entire record is in a "Chart Note" dated October 8, 2002, that was created after Dr. VerVoort conferred with Plaintiff's attorney regarding Plaintiff's workers' compensation claim — not after a visit with Plaintiff (*see* Tr. 215). In the note, Dr. VerVoort stated that Plaintiff's "cervical fusion <u>should</u> effect [sic] her ability to perform repetitive movements of the neck, and her left scapular myofascial problem will <u>definitely</u> limit her ability to perform repetitive movements of the left arm" (Tr. 215) (emphasis added). Thus, Dr. VerVoort's opinion regarding repetitive neck movement is not definitive. Moreover, the "definite" limitations provided by Dr. VerVoort concerning Plaintiff's left arm were included in the RFC determination and adequately reflect the overall opinion of Dr. VerVoort, as his treatment notes consistently reflect that Plaintiff's neck pain was caused by her use of the left arm — his notes do not document pain resulting from repetitive movement of her neck. Additionally, Dr. VerVoort's records, including his records containing the opinion at issue, were received into evidence and made a part of the record at Plaintiff's hearing (*see* Tr. 3, 391), and the VE testified that she had reviewed the exhibits before she rendered her opinion regarding Plaintiff's ability to perform certain jobs (*see*

Tr. 403).[8]  Thus, the undersigned concludes that the ALJ did not err in omitting Dr. VerVoort's equivocal opinion that Plaintiff's cervical fusion "should" affect her ability to perform repetitive movements of the neck, especially considering that the ALJ's ultimate RFC determination precluded Plaintiff from any use of the left arm.

Having determined that the ALJ erred in his consideration of Dr. Yunus's opinion, the next determination is the appropriate relief for his error.  In Social Security cases, the role of this court is to determine whether the law has been properly applied and whether substantial evidence supports the Commissioner's findings, not to find facts.  Because of this limited role, the general rule is to reverse and remand for additional proceedings when errors occur.  *See, e.g.*, Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (referring to general practice); Holt v. Sullivan, 921 F.2d 1221, 1223–24 (11th Cir. 1991).  A case may be remanded for an award of disability benefits, however, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  Davis, 985 F.2d at 534; *see also* Bowen v. Heckler, 748 F.2d 629, 636 (11th Cir. 1984) (if the Commissioner's decision is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the decision with or without remanding the case for a rehearing); Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The record . . . is fully developed and there is no need to remand for additional evidence."); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216–17 (11th Cir. 1991) (finding that improperly refuted testimony of a treating physician must be accepted as true and remanding "with directions to enter a finding of total disability").

Here, while recognizing that normally the improperly refuted testimony of a treating physician must be accepted as true, the court cannot compel the Commissioner to accept Dr. Yunus's opinion that Plaintiff is "disabled," as that term is defined in the Regulations.  To so do would require the Commissioner to credit Dr. Yunus with an understanding of the nuances of how the regulations analyze physical limitations with respect to Plaintiff's job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters.  Additionally, his opinion might be colored by his knowledge of local hiring

---

[8]Although a portion of the VE's testimony is inaudible, it is clear from the context of the ALJ's questions and the VE's answers that she had reviewed and was familiar with the exhibits.

practices, Plaintiff's reluctance to do a particular kind of work, and similar matters, which are not properly considered by the Commissioner in determining disability. 20 C.F.R. § 404.1566. For all these reasons, this court cannot compel the Commissioner to accept Dr. Yunus's opinion that Plaintiff is "unable to work" (*see* Tr. 182). Moreover, this court cannot conclude that disability has been established without a doubt, which would support a recommendation that Plaintiff be awarded benefits.   Instead, the appropriate remedy is to remand this case with directions that the Commissioner reevaluate the opinions of Dr. Yunus, and if necessary, re-contact him if the Commissioner determines that the evidence he has provided is "inadequate [to] determine whether [Plaintiff] is disabled." 20 C.F.R. § 404.1512(e)(1). If the Commissioner again decides to reject the opinion of Dr. Yunus, he must provide additional justification for doing so — simply stating that "an opinion that the claimant is unable to work is reserved to the Commissioner" is not enough.

B.     Plaintiff's Credibility

Plaintiff contends the ALJ failed to apply the Eleventh Circuit's three-part pain standard and improperly discredited her testimony concerning disabling pain (*see* Doc. 17 at 15–17). As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test.  Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991); Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson, *supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Id.*; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." MacGregor v. Bowen, 786 F.2d at 1054; Holt v. Sullivan, 921 F.2d at 1223. "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted). The reasons articulated for disregarding a plaintiff's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective

symptoms and complaints").[9]   People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  Hand, supra, at 1548–49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence."  Arnold v. Heckler, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

In the instant case, the ALJ first cited 20 C.F.R. § 404.1529, demonstrating his recognition of the proper procedure for analyzing Plaintiff's subjective complaints (see Tr. 23).  Next, the ALJ discredited Plaintiff's allegations and provided several reasons for doing so.  First, the ALJ noted that Plaintiff continued to work for almost two years after her accident, and "there is no objective evidence that her condition declined significantly during that two-year interval" (Tr. 25–26).  The ALJ was correct in observing that Plaintiff continued to work, and he was permitted to consider this factor in evaluating Plaintiff's credibility.  See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("it was also not unreasonable for the ALJ to note that Harris's . . . part-time work [was] inconsistent with her claim of disabling pain"); 20 C.F.R. § 404.1571 (work performed during any period in which Plaintiff alleges that she was under a disability may demonstrate an ability to perform substantial gainful activity).

As to the ALJ's second statement (i.e., that "there is no objective evidence that her condition declined significantly during that two-year interval"), the court must first determine the "two-year interval" to which the ALJ refers.  The record reflects that Plaintiff worked 30 hours per week in January 2001 (Tr. 23, 226– 31), 21 hours per week in May 2001 (Tr. 24, 224), 32 hours per week

---

[9]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

in June 2001 (Tr. 221), and, after Dr. VerVoort recommended that Plaintiff increase her hours (*see* Tr. 24, 221, 224), 40 hours per week from approximately July through September 2001 (*see* Tr. 219–20).  In January 2002, Dr. VerVoort again released Plaintiff to work, restricting her only by precluding the performance of grill operation (Tr. 218).  Similarly, on May 16, 2002, Dr. VerVoort continued to recommend work, but limited the use of Plaintiff's left arm to lifting no more than five pounds, no overhead activity, no pushing, and no pulling (Tr. 216).  In October and December 2002, Dr. VerVoort restricted Plaintiff from performing repetitive movements of the left arm and lifting more than five pounds with the left arm (*see* Tr. 213, 215).  Thus, the "two-year interval" to which the ALJ refers concerns the time frame when Plaintiff was working, or the years 2001 and 2002, which immediately followed Plaintiff's alleged onset of disability.

Plaintiff contends that the record does not support the ALJ's finding regarding the lack of objective evidence documenting a significant deterioration of her condition during 2001 and 2002. In pertinent part, Plaintiff notes that Dr. VerVoort opined in May 2002 that Plaintiff's pain "is markedly aggravated by her continued attempts to work as a server" and that Plaintiff had "made tremendous efforts to resume as much work as possible," but the only option for pain control would be to further limit her work activities (Tr. 216; Doc. 17 at 16). Plaintiff further notes Dr. Yunus's opinion in June 2002 that Plaintiff was still trying to work, but her pain was increasing (Tr. 182). However, those opinions of Dr. VerVoort and Dr. Yanus are based upon Plaintiff's subjective complaints of pain, not objective medical evidence, and Plaintiff has pointed the court to no objective medical evidence that contradicts the ALJ's finding.  Indeed, the court's own review of the record reveals that the ALJ's statement is supported by the record.  For example, Dr. Woodham performed an anterior cervical fusion in March 2001, after which Plaintiff reported no significant arm pain, she claimed she was 100 % better than before surgery, and according to Dr. Woodham, her x-rays showed a "great looking" anterior fusion with no problems (Tr. 23, 151, 157, 225).  On July 20, 2001, Plaintiff demonstrated excellent strength of the left shoulder and scapular muscles, but she still had tenderness in the left cervical musculature and scapular muscles (Tr. 220). Additionally, x-rays from April 2002 of Plaintiff's hips and knees showed only mild changes of osteoarthritis involving both hips and slight osteopenia in the left knee (Tr. 24, 179–81).  As noted by the ALJ, the foregoing is not "objective medical evidence" demonstrating a "significant" decline

in Plaintiff's condition during the time Plaintiff was working full or part time.  It is evidence, based on Plaintiff's subjective complaints, that she experienced some increased pain from working.  Thus, the court concludes that the record supports the ALJ's finding regarding the lack of objective medical evidence documenting a significant decline in Plaintiff's condition during 2001 and 2002. Although not determinative of a claimant's credibility alone, an ALJ is permitted to consider the objective medical signs and laboratory findings, or lack thereof, when determining a claimant's credibility.  *See* 20 C.F.R. § 416.929(c).  Thus, the ALJ did not err in discounting Plaintiff's complaints of pain based on her continued work and lack of objective medical evidence documenting a significant decline in her condition during the time she worked.

In further discounting Plaintiff's complaints, the ALJ noted that Plaintiff was offered a job by her former employer which would not involve lifting more than five pounds, but Plaintiff declined the job offer, stating that she would continue to pursue disability (Tr. 26).  Indeed, the record reflects that Plaintiff was offered a job at Waffle House in late 2002 or early 2003, within the restrictions imposed by Dr. VerVoort, but she would not take the job "until she ha[d] a chance to communicate with her attorney," and she noted that she was "continuing to pursue Social Security Disability Benefits" (Tr. 210).  Interestingly, Plaintiff did not decline the job offer because she had not had a chance to talk to her physician; she declined the job offer because had not had a chance to talk to her attorney — suggesting that she was capable of performing the job, but she did not want to diminish her chances of obtaining benefits.  An ALJ may discount a claimant's subjective complaints for, among other reasons, that she appeared to be motivated to qualify for disability benefits.  *See* Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004); Gaddis v. Chater, 76 F.3d 893, 895–96 (8th Cir. 1996) (strong element of secondary gain in plaintiff's conduct belies his sincere belief that he is truly disabled and unable to perform any substantial gainful activity); Frey v. Bowen, 816 F.2d 508, 516 (10th Cir. 1987) (citing Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)) (subjective complaints must be evaluated with due consideration for credibility, motivation, and medical evidence).  Thus, the ALJ did not err in discounting Plaintiff's credibility on this basis.

Next, in further discounting Plaintiff's allegations, the ALJ noted that Plaintiff "stated in a questionnaire dated February 2005 that with a sit stand option that she could stand for two hours in

an eight-hour day and sit for six hours in an eight-hour day" (Tr. 26).  The ALJ, however, provided

no further explanation regarding this statement, such as why it detracts from Plaintiff's credibility

(*see id.*).  It would appear, as the Commissioner contends, that the ALJ meant that Plaintiff's own

estimation of her abilities is consistent with his ultimate conclusions regarding her ability to perform

certain work (*see* Doc. 22 at 11), but the ALJ did not draw this conclusion.  Moreover, even if

Plaintiff's estimations were true, they do not address her other known limitations, such as the

restriction regarding her left arm.  In addressing this ambiguous comment of the ALJ, Plaintiff notes:

> The significance of [Plaintiff's ability to sit for a total of six hours and stand for a
> total of two hours] is unclear because [Plaintiff] would be disabled at the age of 50
> even if able to perform such activities.  Furthermore, prior to the age of 50, the use
> of a cane would need to be considered before determining whether such ability
> would render [Plaintiff] not disabled.  Rule 201.14; SSR 96-9p.  Therefore, the
> ability to perform such activity is neither relevant nor detracts from [Plaintiff's]
> credibility.

The parties' different interpretations of the meaning of the ALJ's statement highlights the problem

caused by the ALJ's failure to explain the statement.  Again, it is not for this court to say what the

ALJ actually meant.  The reasons provided by the ALJ must build an accurate and logical bridge

between the evidence and the result, Green, 51 F.3d at 100–01, and the ALJ's failure to explain his

statement was error.  Thus, the court cannot consider this reason provided by the ALJ in determining

whether Plaintiff's complaints were properly rejected.

Finally, the ALJ noted that, although Plaintiff's diabetes has remained "for the most part

uncontrolled," Plaintiff has failed to follow her diabetic diet and lose weight (Tr. 26).  Indeed, Dr.

Sabbagh noted compliance issues regarding Plaintiff's diet and her taking medications as instructed

(Tr. 317–23).  A claimant's failure to seek treatment is a proper factor for the ALJ to consider.  *See*

Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence,

it is proper for ALJ to consider use of painkillers, failure to seek treatment, daily activities,

conflicting statements, and demeanor at the hearing).  However, this factor related only to Plaintiff's

diabetes and would not provide a basis for discounting complaints related to her other impairments.

Finally, although the Commissioner contends that the ALJ further discounted Plaintiff's

complaints based upon the evidence of Plaintiff's daily activities (*see* Doc. 22 at 8), the court notes

that the ALJ did not specifically use this evidence to discount Plaintiff's complaints of pain or other

physical limitations.  Plaintiff's activities were merely described by the ALJ (*see* Tr. 23) or mentioned only with respect to Plaintiff's ability to mentally perform tasks, such as driving or shopping (*see* Tr. 26).

In conclusion, the court has determined that some of the ALJ's reasons for discounting Plaintiff's complaints have support in the record, but one is unclear, one relates only to her diabetic condition, and one alleged by the Commissioner (i.e., Plaintiff's daily activities) does not appear to have actually been considered by the ALJ.  Thus, while there is arguably enough evidence in the record to support the ALJ's ultimate conclusion regarding Plaintiff's credibility, in light of this court's recommendation to remand, it is further recommended that upon remand the ALJ reevaluate Plaintiff's credibility.  In other words, this court does not deem it necessary to reverse the ALJ's credibility finding at this point, nor accept Plaintiff's complaints as true, because the ALJ cited the correct pain standard and provided some reasons, supported by the record, for discounting her complaints.  Instead, upon remand, the ALJ should be directed to better articulate the grounds for his decision since meaningful appellate review at this juncture is difficult.

C.      Appeals Council's Consideration of Evidence Submitted by Plaintiff

Plaintiff contends the Appeals Council (AC) erred in failing to remand her case for further consideration.  Specifically, Plaintiff contends that evidence submitted to the AC regarding a worsening of her depression and the recurrence of claudication symptoms further supports her allegations of an inability to perform light work, and therefore, the AC erred in denying review and affirming the ALJ's decision in light of the new evidence (Doc. 17 at 24).

As noted *supra*, "When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Secretary.  20 C.F.R. § 404.955," Keeton v. Dept. of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994), subject to review in this court.  When new evidence has been submitted to the AC, it "is part of the administrative record that goes to the district court for review," whether the AC accepted the case for review or denied review.  *Id.* at 1067.  When the AC refuses to consider new evidence submitted to it and denies review, that decision is subject to judicial review because it amounts to an error of law.  20 C.F.R. § 404.970(b).  Where as here, however, the AC considers the new evidence and denies review, this court may consider the

evidence only if it meets the three-prong standard for remand under sentence six of 42 U.S.C. § 405(g).[10]

A remand for consideration of new evidence pursuant to sentence six is warranted if the claimant shows "that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." Falge, 150 F.3d at 1323; Keeton, 21 F.3d at 1067; Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986) (citing Cherry v. Heckler, 760 F.2d 1186 (11th Cir. 1985)).[11] To be material, the new evidence must relate back to the original alleged onset date of disability, or at least must relate to the disabilities litigated administratively. Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988). In other words, the new evidence must be relevant to a condition existing on or before the ALJ's decision, Thomas v. Sullivan, 928 F.2d 255, 260–61 (8th Cir. 1991), or at least before the final decision of the AC. See Smith v. Bowen, 792 F.2d 1547, 1551 (11th Cir. 1986) (AC may consider new evidence). Good cause may be shown, for example, where the evidence did not exist at the time of the administrative decision. Cherry, 760 F.2d at 1192.

In the instant case, the evidence at issue is a two-page record from Dr. Yunus dated February 8, 2006, and a one-page record from Dr. Yunus dated March 21, 2006 (see Tr. 8A, 384–86). In pertinent part, the February record documents Plaintiff's report of being "quite depressed" and continuing to have pain in the left side of her neck and the back of her left shoulder (Tr. 384). The February record also contains Dr. Yunus's belief that Plaintiff would benefit from the use of psychotropic medications, including Seroquel, and his addition of that medication to Plaintiff's medication regimen (Tr. 384–85). The March report is similar, but it also contains a notation (apparently) written by Dr. Yunus that "patient is permanently disabled" (Tr. 386).

---

[10]Remand may occur pursuant to either sentence four or sentence six of § 405(g). Melkonyan v. Sullivan, 501 U.S. 89 (1991). A sentence six remand can occur on the motion of the Commissioner before he files an answer for good cause, or, alternatively, upon a showing that there is new material evidence and good cause for the failure to incorporate such evidence into the record.

[11]The Supreme Court has noted a conflict among the circuits as to the judicial standard of review for this issue. Sullivan v. Finkelstein, 496 U.S. 617, 110 S. Ct. 2658, 2664 n.6, 110 L. Ed. 2d 563 (1990). This court must follow the standard set by Caulder, 791 F.2d at 875, which reiterated the ruling in Cherry that the court determines the materiality of new evidence for purposes of remand in a de novo proceeding as a matter of law.

Initially, good cause exists for Plaintiff's failure to submit the evidence at the lower administrative level, as the evidence did not exist until well after September 20, 2005, the date the ALJ rendered his decision.  Next, regarding whether the evidence is new and noncumulative, the court finds that the evidence related to Plaintiff's <u>physical</u> condition is not new and noncumulative because it generally shows only a continuation of Plaintiff's symptoms.  Regarding Plaintiff's mental condition, however, the court concludes that the evidence is new and noncumlative because it documents a worsening of Plaintiff's depression and the addition of psychotropic medication to her medication regimen.  Nevertheless, Plaintiff has failed to satisfy the third prong necessary for a remand because the new evidence regarding her depression is not material — that is, it reflects a deterioration of her depression <u>after the period under adjudication</u>.  "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition."  <u>Szubak v. Secretary</u>, 745 F.2d 831, 834 (3d Cir. 1984) (citing <u>Milano v. Bowen</u>, 809 F.2d 763, 767 (11th Cir. 1987)).  Thus, the court concludes that AC did not err in failing to remand Plaintiff's case on the basis of Dr. Yunus's February and March 2006 office notes, and similarly, that the records do not warrant remand by this court.  However, the court has previously determined that the ALJ erred in his consideration of the opinions of Dr. Yunus and that the case should be remanded to further consider his opinions; thus, upon remand, it is further recommended that the ALJ be directed to consider the new evidence from Dr. Yunus and any bearing it may have on whether Plaintiff was disabled during the time period relevant to Plaintiff's instant applications for benefits.[12]

D.     Plaintiff's Physical Mental RFC Determinations & the Partially Inaudible Transcript

Plaintiff's remaining issues need not be addressed in great detail in light of the preceding discussion.  Nevertheless, it is worth noting Plaintiff's allegation that the ALJ erred in failing to consider limitations resulting from her vascular disease, including its effect on her ability to perform light work.  Initially, the court notes that Plaintiff was not diagnosed with this impairment until

---

[12]The court emphasizes that this evidence appears to be largely irrelevant to the time frame involved in Plaintiff's instant claims for benefits.  As noted by the Commissioner (*see* Doc. 22 at 14), if Plaintiff believes her condition deteriorated <u>after the time frame relevant to the instant appeal</u>, she should file a new application for benefits.

October 2004, although she had a history of bilateral lower extremity claudication, the symptom of the disease (*see* Doc. 17 at 12; Doc. 22 at 6; Tr. 326–29).  However, Plaintiff underwent successful angioplasty of the right superficial femoral artery in November 2004 (Tr. 25, 334–36).  She tolerated the procedure well and had a palpable pulse in her foot following surgery (Tr. 25, 335). Nevertheless, the ALJ found that Plaintiff's arterial occlusive disease was a severe impairment. However, despite finding it be a severe impairment, the ALJ did not explain whether the condition imposed any limitations on Plaintiff's ability to perform work, and he did not include any apparent limitations (based on the disease) in his hypothetical questions posed to the VE.  Thus, upon remand, the ALJ should clarify to what extent Plaintiff's arterial occlusive disease imposed limitations on her ability to perform work, and he should include any such limitation in his hypothetical questions of the VE.  If the ALJ finds that no such limitations exist, he should so state and provide an explanation for the finding.

As to Plaintiff's mental RFC determination, upon remand the ALJ should note the weight accorded to the opinions of the various sources who treated Plaintiff or offered opinions regarding her mental capacities.  For example, although the ALJ discussed the opinions of Dr. Lankford, who found it unlikely that Plaintiff could return to the competitive work force, and Dr. Patel, who assigned Plaintiff a GAF of 44, he failed to indicate the weight assigned to these opinions (*see* Tr. 25).  Further, the ALJ's opinion should clearly document use of the "special technique" for evaluating mental impairments, which is specified in 20 C.F.R. § 404.1520a.  Moreover, given that the ALJ found Plaintiff's depression to be severe, he should explain why the only restriction contained in Plaintiff's RFC is that she is limited to performing "simple, non-detailed tasks," and he should indicate the basis for this finding (if the ALJ again makes the same RFC determination).

Finally, the court notes that numerous portions of the transcript of Plaintiff's hearing before the ALJ are inaudible — further complicating review of the record in this case (*see* Tr. 389–406). Indeed, only one page (*see* Tr. 398) of the eighteen-page transcript is fully audible.  It goes without saying that the ALJ has a duty to ensure that an adequate record of the hearing is obtained, so that a transcript can be produced and meaningful review by this court can occur.  If this was the only error in the instant case it might not warrant a remand because most of the testimony can be discerned from the context of the questions and answers and from a review of the ALJ's opinion.

*See, e.g.*, Andres v. Bowen, 870 F.2d 453, 455–56 (8th Cir. 1989) (absent an indication that missing portions of the transcript would bolster the plaintiff's arguments or prevent judicial review, remand is not appropriate based upon inaudible portions of the record).  However, given the totality of the circumstances of the instant case, it is another factor weighing in favor of remand.

For the foregoing reasons, the undersigned concludes that the Commissioner's decision is not supported by substantial evidence and should not be affirmed.  *See* 42 U.S.C. § 405(g); Foote, 67 F.3d at1556 (remanding for additional administrative proceedings).

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED**, that the Commissioner be ordered to remand this case to the Administrative Law Judge for further proceedings consistent with this report and recommendation, and that the Clerk be directed to close the file.

At Pensacola, Florida this 7ᵗʰ day of May 2008.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**